Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4878 | **DATE** | 9/25/2000 |
| **CASE TITLE** | Bear Stearns & Co., Inc vs. James Robert Sitlington, III | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment on Count III of the second amended complaint. Plaintiff's motion for summary judgment on Count III of the second amended complaint [92-1] is granted. Judgment is entered in favor of Plaintiff Bear Stearns & Co., Inc and against defendant James Robert Sitlington, III in the amount of $500,000 plus pre-judgment interest and costs. Plaintiff's reply memorandum requests are hereby denied. Status hearing date of 9/28/00 is vacated.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 29 2000 | | |
| | Notified counsel by telephone. | date docketed | | |
| | Docketing to mail notices. | E0-7 | | 108 |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 SEP 28 AM 9: 20 | 9/26/2000 | |
| | | | date mailed notice | |
| SM | courtroom deputy's initials | | SM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BEAR STEARNS & CO., INC.,　　)
a New York Corporation,　　　　)
　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　)　Case No. 97 C 4878
v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)　Magistrate Judge Ian H. Levin
JAMES ROBERT SITLINGTON III,　)
　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　 )

## MEMORANDUM OPINION AND ORDER

DOCKETED SEP 29 2000

At issue before the court is Plaintiff Bear Stearns & Co., Inc's. ("Bear Stearns") Motion for Summary Judgment on Count III of the Second Amended Complaint. For the reasons set forth below, Plaintiff's Motion is granted.

## FACTUAL BACKGROUND

James Robert Sitlington III ("Sitlington") was employed as a broker by Bear Stearns. In 1996, he solicited Jay Botchman ("Botchman") to open an account with Bear Stearns. Sitlington convinced Botchman to invest in a Candian company called MiddleGate, that was supposedly involved in a venture to construct toll roads in China. Sitlington made several misrepresentations to Botchman regarding the MiddleGate deal, and Botchman detrimentally relied on Sitlington's misrepresentations.

Botchman agreed to wire $500,000 to MiddleGate's parent, Interquest, Inc. This money was wire transferred to Interquest's bank account in Canada on March 10, 1997. Bear Stearns received no commission or other compensation from this transaction. However, Interquest paid Sitlington a secret $25,000 commission which was transferred to Sitlington's personal bank

account on April 1, 1997.[1]

In short, Botchman lost his investment *en toto*. Sitlington subsequently plead guilty to federal wire fraud charges arising in part out of his fraudulent inducement to Botchman to make the $500,000 investment.[2] Bear Stearns has repaid Botchman the $500,000 he invested along with lost interest.

This court, on February 11, 2000, granted Plaintiff's Motion for Partial Summary Judgment on the issue of liability on Count III of the Second Amended Complaint, the only count for relief remaining at issue. In so moving for partial summary judgment, Plaintiff reserved the issue of the amount of damages it suffered under Count III. Plaintiff requests by the present motion an entry of summary judgment in its favor and against Defendant, on the issue of damages, in the amount of $500,000 plus prejudgment interest and costs.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of

---

[1] Regarding this point, Mr. Sitlington falsely represented that MiddleGate was a Bear Stearns deal. In reality, MiddleGate was Sitlington's own private deal.

[2] A judgment of restitution for $1,750,000 in Bear Stearns favor, including the $500,000 involved herein, was imposed against Sitlington as part of his criminal sentence.

2

material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, __ F.3d __, 1998 WL 81458, at *2 (7th Cir. Feb. 27, 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also LINC*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## II. THE RECORD ESTABLISHES PLAINTIFF SUFFERED $500,000 IN DAMAGES FROM THE FACTS ALLEGED IN COUNT III OF THE SECOND AMENDED COMPLAINT.

The evidence of record, including as discussed, shows that Plaintiff suffered a $500,000 loss, as a result of Defendant's fraudulent activities and breaches of duty. This is the same amount that Botchman invested in MiddleGate based on Defendant's representations.

Plaintiff argues that the proper measure of damages is the "market measure," which is based on the difference between the price paid for the MiddleGate stock and the price that would have been paid today for the stock "in an arm's length transaction between fully informed parties...." *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 441-42 (7th Cir.1987).

The MiddleGate stock in question is a minority interest in a privately held Canadian corporation for which there were only four original shareholders and for which no records exist at either the Securities Exchange Commission or the Master Security Description Information system. The stock has restrictions on its transferability, it is not traded on any securities exchange and it has no liquidity.[3] Plaintiff produced evidence by affidavit that the MiddleGate stock has no market value.[4] *See* Goldstein Aff., ¶ 2 et seq.

It is important to note that Plaintiff's suit was not brought under the guise of the Federal Securities laws, but rather was brought under state law claims of fraud and breach of fiduciary duty. Accordingly, this court analyzes this action as a common law cause of action. Plaintiff contends that the proper measure of damages is the difference between the price paid for the MiddleGate stock, $500,000, and its market value, zero. In *Terrell v. Childers*, 836 F.Supp. 468 (N.D.Ill.1993), the court explained that the "measure of damages for breach of fiduciary duty, like that in an action for fraud, entitles the purchaser to recover the purchase price." *See, GNP Commodities, Inc. v. Walsh Heffernan Co.*, 95 Ill.App.3d 966, 51 Ill.Dec. 245, 248, 420 N.E.2d 659, 672 (1981). In *Smith v. Bolles*, 132 U.S. 125, 129-30, 10 S.Ct. 39 (1889), the plaintiff sought to recover damages for alleged fraudulent representations in the sale of 4,000 shares of mining stock at the price of $1.50 per share. Plaintiff alleged that the stock was wholly worthless, but would have been worth at least $10 per share had it been as represented by defendant. The Supreme Court explained that:

---

[3] The Prospectus for the private offering by which the stock was distributed to Plaintiff's customer itself states that the stock will likely be neither liquid nor transferable.

[4] Defendant's affidavits, essentially and fatally, do not set forth "specific facts" to counter Plaintiff's material evidence on this point. *See* Fed.R.Civ.P. 56(e).

4

> The measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could plaintiff have recovered the value it would have had if the property had been equal to the representations. What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase....If the jury believed from the evidence that the defendant was guilty of the fraudulent false representation alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, – such that the moneys the plaintiff paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct....

*Id. See also, Rockefeller v. Merritt*, 76 F. 909, 914 (8th Cir.1896) ("The true measure of the damages suffered by one who is fraudulently induced to make a contract of sale, purchase, or exchange of property, is the difference between the actual value of that which he parts and the actual value of that which he receives under the contract.") Therefore, Plaintiff is entitled to the amount it reimbursed Botchman for the worthless MiddleGate securities, $500,000.

Respectfully, the Court finds that Defendant's arguments are either effectively refuted by Plaintiff's reply memorandum or otherwise unmeritorious.

## CONCLUSION

The facts of this case are straightforward and uncontested. There is no genuine, material issue of fact as to whether Plaintiff suffered damages in the amount of $500,000. As discussed, it did.

Accordingly, Summary Judgment is entered in favor of Plaintiff and against Defendant on Count III of the Second Amended Complaint in the amount of $500,000 plus prejudgment interest and costs.[5]

**ENTER:**

*/s/ Ian H. Levin*
IAN H. LEVIN
**United States Magistrate Judge**

Dated: September 25, 2000

---

[5]The jurisdiction of this court is based solely on diversity of citizenship, thus Illinois law applies as to Defendant's claim for prejudgment interest. In Illinois, prejudgment interest is governed by 815 ILCS 205/2, which provides for interest rate of 5% per annum. The general rule in Illinois is that "prejudgment interest cannot be awarded unless provided by statute or agreement of the parties." *In re Air Crash Disaster, etc.*, 644 F.2d 633, 638 (7th Cir.1981). Absent an agreement by the parties, however, an allowance of prejudgment interest is permitted by statute if the amount due is fixed or easily computable. *Cushman & Wakefield of Ill., Inc. v. Northbrook 500 Ltd. Partnership*, 112 Ill.App.3d 951, 68 Ill.Dec. 460, 445 N.E.2d 1313, 1321 (1983). *See, First Nat. Bank of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir.1979); *Central Nat. Chicago Corp. v. Lumbermens Mutual Cas. Co.*, 45 Ill.App.3d, 401, 3 Ill.Dec. 938, 359 N.E.2d 797 (1977). As seen herein, *supra*, the "amount due" is easily computable. In the circumstances here, in the exercise of the court's discretion, the request for prejudgment interest is thus granted.